IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KYLE G. FARRAND**<br>846 Whitetail Dr.<br>Round Rock, TX 78681<br><br>**ROBERT D. WOODWARD**<br>2487 Sycamore Lakes Cv<br>Herndon, VA 20171<br><br>*on behalf of themselves and all others similarly situated*,<br>     *Plaintiffs*,<br>               v.<br>**LEXISNEXIS RISK SOLUTIONS, INC.**<br>32 South St.<br>Baltimore, MD 21202<br><br>**GEICO ADVANTAGE INSURANCE COMPANY**<br>1345 Perimeter Parkway<br>Virginia Beach, VA 23454<br><br>     *Defendants*. | Case No. 1:21-cv-952<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Kyle G. Farrand and Robert D. Woodward, on behalf of themselves and all other similarly situated consumers, complaining of Defendants LexisNexis Risk Solutions, Inc. ("LexisNexis") and GEICO Advantage Insurance Company ("Geico," collectively "Defendants"), allege as follows:

### I.   NATURE OF THE CASE

1.     This is a consumer class action asserting Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") claims against LexisNexis, a consumer reporting agency, and Geico, an insurance company that furnishes information to LexisNexis.

2.     Before the FCRA's enactment, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan.

31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the FCRA's cornerstone provisions. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high standard on consumer reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

4. Additionally, the FCRA requires that, upon receiving a dispute from the consumer, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. § 1681i(a)(1)(A).

5. Finally, the FCRA requires that, when notified of a dispute by a consumer reporting agency, a furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" and "report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1).

6. LexisNexis compiles and maintains files on consumers on a nationwide basis, including data about insurance coverage, claims, and usage that are widely used in the insurance

industry for quoting rates to potential customers. Geico furnishes this information about its customers to LexisNexis.

7. In this case, Geico furnished inaccurate information about each of the Plaintiffs to LexisNexis indicating that Plaintiffs had filed a claim against their Geico auto insurance policy, when they had not. LexisNexis, in turn, inaccurately reported that information to other insurers, causing Plaintiffs to be quoted higher rates than they otherwise would have been. When Plaintiffs disputed this inaccurate information, the information was not corrected.

8. Accordingly, Plaintiff Farrand alleges claims against LexisNexis for failing to reasonably ensure the maximum possible accuracy of his consumer reports in violation of the FCRA, 15 U.S.C. §1681e(b) and for failing to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

9. Plaintiffs Farrand and Woodward allege claims against Geico for failing to reasonably reinvestigate the erroneous information it reported to LexisNexis.

.

## II.  PARTIES

10. Plaintiff Kyle G. Farrand is a natural person who resides in Round Rock, Texas. At the time he purchased his Geico policy, he resided in Grand Rapids, Michigan. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

11. Plaintiff Robert D. Woodward is a natural person who resides in Herndon, Virginia. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. Defendant LexisNexis Risk Solutions, Inc. is a Georgia corporation that does business nationwide, including in this District. It is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and 15 U.S.C. § 1681a(f), respectively. LexisNexis is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

13. Defendant GEICO Advantage Insurance Company is a corporation incorporated and headquartered in the Southern Division of Maryland. It is a "person" as defined by 15 U.S.C. § 1681a(b) and a "furnisher" of information to consumer reporting agencies as regulated by 15 U.S.C. § 1681s-2(b).

### III.   JURISDICTION & VENUE

14. The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. The court also has jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because the amount in controversy exceeds $5,000,000 and the diversity requirements of that section are met.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant Geico is headquartered in this Division and District and Defendant LexisNexis has substantial contacts in this District. Venue is also proper under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### IV.   FACTUAL ALLEGATIONS

16. Defendant LexisNexis offers a wide variety of data products to its customers, including a product called a "C.L.U.E. Auto Report" which includes information about consumers' "Automobile Insurance Claim Records." This C.L.U.E. Auto Report is a consumer report governed by the FCRA.

17. Auto insurance companies use C.L.U.E. reports, including the information in the "Automobile Insurance Claim Records" section when underwriting insurance policies and determining the amount of a consumer's insurance premium.

18. More than 99 percent of insurers writing automobile coverage provide claims data to the C.L.U.E Auto database. https://risk.lexisnexis.com/products/clue-auto (last visited Apr. 2, 2021).

19. Auto Insurers use the information in the C.L.U.E. reports to reduce their risk and liability by predicting future claims. *Id.*

20. If a consumer's C.L.U.E. report shows a history of prior auto insurance claims, an insurance company will consider them a higher risk than someone with no prior claims, and they will likely be quoted a higher insurance premium when seeking a new insurance policy.

21. Defendant Geico is one of the insurance companies that furnishes information about its customers, their policies, and their claim activity to LexisNexis for C.L.U.E. reports.

22. However, Geico has an established policy and procedure of reporting all inquiries regarding potential claims to LexisNexis, as if they were actual claims, regardless of whether or not that is accurate.

23. In other words, if a consumer calls to ask a question about a deductible, Geico will report that question as a claim, regardless of whether the consumer actually requests that Geico pay out benefits under the insurance policy.

24. Geico itself defines claim as "[a]ny request or demand for payment under the terms of the insurance policy."[1]

25. Under this definition, or any other reasonable definition, a consumer does not make a claim simply by calling Geico to ask about their policy's coverage or benefits.

26. Upon information and belief, Geico's policy of reporting consumers' questions as claims is meant to systematically trap Geico customers in their existing relationship with Geico,

---

[1] https://www.geico.com/information/insurance-terms/, accessed March 12, 2021.

because if consumers seek insurance from another company, they will be quoted a higher rate due to the inaccurate "claim" information that Geico has reported about them to LexisNexis.

### *Facts Regarding Plaintiff Farrand*

27. Plaintiff Farrand purchased auto insurance coverage from Defendant Geico beginning in 2013 or 2014 and terminated his policy in 2017.

28. On or around October 21, 2016, Plaintiff Farrand or another insured contacted Defendant Geico to ask about the deductible on the policy because there was a crack in his windshield.

29. After this communication, Plaintiff Farrand decided not to file a claim and instead decided to pay out of pocket to have the windshield fixed, without making a claim for the damage.

30. Subsequently, Geico erroneously reported to LexisNexis that Plaintiff Farrand had filed a claim on October 21, 2016.

31. However, as discussed above, Farrand's question was not a "request or demand for payment" under the terms of Plaintiff Farrand's insurance policy.

32. In June 2020, Plaintiff Farrand was shopping for a new insurance policy and received a quote for coverage.

33. When reviewing the quote, Plaintiff Farrand noticed that the quoted rate was high. Plaintiff Farrand learned that the rate was high because, according to a LexisNexis C.L.U.E. auto report, Plaintiff Farrand had made a claim against his Geico insurance policy on October 21, 2016, and that this claim was still open.

34. The information in the C.L.U.E. auto report was wrong: Plaintiff Farrand had not made a claim on his policy.

35. Defendant Geico knew this information was wrong: as the insurance company, it knew Plaintiff had never submitted a claim, and it had never paid a claim. Defendant Geico benefits from this misreporting, because it makes it more expensive for Geico customers to obtain insurance elsewhere.

36. Defendant LexisNexis should have known that this information was wrong: there was no reason a claim for a cracked windshield to still be open after 4 years.

37. Plaintiff Farrand disputed this inaccurate information on his C.L.U.E. report with LexisNexis on or around June 25, 2020. On information and belief, LexisNexis, pursuant to the procedure in 15 U.S.C. § 1681i, forwarded this dispute onto Geico.

38. In response to Plaintiff Farrand's dispute, LexisNexis and Geico failed to conduct a thorough and meaningful investigation into the substance of Plaintiff Farrand's dispute. Instead, they made minor changes to the information on file, without changing the core information reported.

39. Specifically, Defendants changed the "claim disposition" from "open" to "closed," changed the claim amount from $60 to $70, and changed the "at fault indicator," which had been blank, to "not at fault."

40. This reporting was still inaccurate, because the fact remained that Plaintiff Farrand had made no insurance claim whatsoever.

41. Because the inaccurate information remained in Plaintiff Farrand's report, Plaintiff Farrand sent a follow-up dispute to LexisNexis by mail on or around January 18, 2021. Plaintiff Farrand also sent a copy directly to Geico.

42.     Again, Defendants failed to conduct a meaningful investigation of Plaintiff Farrand's dispute, verified the inaccurate information, and refused to delete it from Plaintiff Farrand's C.L.U.E. Report.

43.     As a result of Defendants' conduct, Plaintiff Farrand has suffered actual damages, including increased insurance premiums, damage to his reputation, and expense and inconvenience associated with attempting to correct the error.

*Facts Regarding Plaintiff Woodward*

44.     On or around July 25, 2018, Plaintiff Woodward called his auto insurer, Geico, to ask about the deductible on his car because there was a scratch on his bumper.

45.     After speaking with a Geico representative, Plaintiff Woodward decided not to file a claim and instead decided to pay to have the scratch fixed out-of-pocket without making an insurance claim for the damage.

46.     In February 2020, Plaintiff Woodward applied for a new insurance policy and received quotes from several companies, including Progressive and State Farm.

47.     When receiving estimates from these companies, Plaintiff Woodward noticed that his rates seemed high. Some of the companies disclosed to Plaintiff that the higher rates were due to the fact that Plaintiff Woodward had made a claim against his Geico insurance policy for an at-fault accident on July 25, 2018.

48.     The companies also disclosed to the Plaintiff Woodward that they had obtained this information from LexisNexis, in a C.L.U.E. auto report.

49.     The information in the C.L.U.E. auto report was inaccurate because Plaintiff Woodward did not make a request or demand for payment under the terms of his Geico insurance policy on or around July 25, 2018.

50. Defendant Geico knew that Plaintiff Woodward had not made a claim against his insurance policy. In fact, it listed the claim amount as "zero." Unfortunately, because of the way companies view these reports, listing a claim amount as "zero" does not undo the damage caused by the assertion that the consumer made a claim.

51. Plaintiff disputed this inaccurate information on his C.L.U.E. report with LexisNexis on or around April 22, 2020.

52. In accordance with its standard practices and procedures, and as required by the Fair Credit Reporting Act, LexisNexis forwarded Plaintiff Woodward's dispute to Geico.

53. In response to Plaintiff Woodward's dispute, Geico failed to conduct a thorough and meaningful investigation into the substance of the dispute. Instead, it verified the disputed information as inaccurate and refused to remove it from Plaintiff Woodward's C.L.U.E. report.

54. Because the inaccurate information remained in Plaintiff Woodward's report, Plaintiff Woodward sent a follow-up dispute to LexisNexis on or around May 11, 2020.

55. Again, LexisNexis forwarded this dispute to Geico for processing.

56. Geico again refused to conduct a meaningful investigation of Plaintiff's follow-up dispute, verified the inaccurate information, and told LexisNexis that the information should remain on Plaintiff Woodward's C.L.U.E. report.

### *Defendants' Violations Were Willful*

57. Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. Defendants' conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known.

58. For example, LexisNexis failed to implement any procedure to identify and correct the inaccuracy in their C.L.U.E. report before furnishing it to a third party. It did not have any

mechanism in place to flag claims with a "zero" claims amount or claims that had been open for several years without the claim being either paid or denied.

59. LexisNexis also failed to take seriously Plaintiff Farrand's allegation in his dispute letter that Geico's practice was widespread and intended to limit consumers' ability to obtain competitive rates. Specifically, Plaintiff Farrand put LexisNexis on notice that "Geico regularly misreports questions from its customers about potential claims as though the customer made a claim. This is misleading because it makes it seem like customers made claims when all they did was ask questions."

60. Based on Plaintiffs' disputes, other disputes, and the plain text of its own reports, LexisNexis knew or should have known that these claims were inaccurate on their face.

61. LexisNexis had no reasonable procedures in place to ensure the accuracy of its reporting, or to investigate allegations of widespread misreporting by Geico.

62. Instead, LexisNexis relied solely on Geico to investigate consumers' disputes of the information in its C.L.U.E reports.

63. LexisNexis's standard practice is that when it receives a dispute from a consumer, LexisNexis forwards the dispute to the furnisher of the information and waits for the furnisher to respond. Once the furnisher notifies LexisNexis of the outcome of its investigation, LexisNexis takes no additional steps to independently investigate the consumer's dispute. This is true even when the reported information is erroneous on its face, and even when the consumer has alleged that the misreporting is intentional.

64. LexisNexis followed its standard procedures in this case, even though it received Plaintiff Ferrand's two disputes and even though it was previously sued for substantially similar

inaccuracies by Plaintiff Woodward. *Woodward v. LexisNexis Risk Solutions, Inc.*, No. 1:20-cv-00789 (E.D. Va. Jul. 14, 2020).

65. Geico knew or should have known that its reporting of consumer inquiries as "claims" was inaccurate. By its own definition, these inquiries were not claims because they were not "demands for payment." Geico also knew its reporting was inaccurate because consumers, including Plaintiffs, complained about such inaccurate reporting. And Geico knew that its false reporting operated to its benefit, allowing it to increase consumers' insurance rates while at the same time ensuring its competitors would do the same based on the false information it supplied to LexisNexis.

66. Despite this knowledge, Geico had no mechanism in place to ensure accurate reporting in the first instance, or to correct inaccurate reporting in response to consumer disputes.

67. Geico was also on notice of this problem because its conduct was intentional, and because it received two disputes from each of the Plaintiffs in this case. Geico received disputes directly from Plaintiffs and indirectly through LexisNexis.

68. Discovery will reveal additional disputes that each of the Defendants received from consumers alleging similar issues.

69. Despite this notice, Defendants failed to make the appropriate changes to their procedures to avoid similar errors in the future. *See*. Federal Trade Comm., 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011, at 67 ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should

establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.")

70. In addition, the Defendants' processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. LexisNexis' conduct was willful because it was accomplished through intended procedures that prioritize cost-saving over accuracy. Geico's conduct was willful because it was accomplished through intended procedures that prioritize its own profitability over accuracy.

## V.   CLASS ACTION ALLEGATIONS

71. Plaintiff Ferrand brings Count I against Defendant LexisNexis pursuant to FED. R. CIV. P. 23(b)(3) on behalf of the following **Inaccurate Reporting Class**:

> All natural persons that: (1) were the subject of a LexisNexis C.L.U.E. report sold to a third party; (2) in the two years prior to the filing of this lawsuit; (3) in which the C.L.U.E. report falsely stated that the individual had made an automobile insurance claim to Geico.

72. Plaintiff Ferrand brings Count II against LexisNexis pursuant to FED. R. CIV. P. 23(b)(3) on behalf of the following **Disputes Class**:

> All members of the **Inaccurate Reporting Class** who sent a dispute to LexisNexis stating that the Geico claim on their report was not correct because they had not made the claim.

73. Plaintiff Ferrand brings Count III against Geico pursuant to FED. R. CIV. P. 23(b)(3) on behalf of the following **Unreasonable Investigation Class**:

> All members of the Disputes Class as to whom Geico responded to the consumers' dispute by affirming to LexisNexis that Geico's false reporting was accurate.

74. Plaintiffs reserve the right to amend the definitions of the Classes based on discovery or legal developments.

75. **Numerosity. FED. R. CIV. P. 23(a)(1).** The class members are so numerous that their joinder is impractical. LexisNexis issues a vast number of C.L.U.E. Reports each year, and Geico reports a vast number of claims each year.

76. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

   a. Whether LexisNexis failed to follow reasonable procedures to assure that its reported insurance claims are accurate;

   b. Whether LexisNexis and Geico failed to conduct a reasonable investigation of class members' disputes;

   c. Whether this conduct constituted violations of the FCRA; and

   d. Whether the violations were negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of Plaintiff and the putative class members.

77. **Typicality. FED. R. CIV. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent. Plaintiffs have the same claims as class members, arising out of Defendants' common course of conduct and from the same operative facts, and are based on the same legal theories. Plaintiffs, as every putative class member, allege violations of the same FCRA provisions regarding the different classes that they seek to represent. Plaintiff Ferrand explicitly made his dispute to both Defendants on behalf of "all people…who Geico falsely said they made claims when they didn't." Plaintiffs' claims challenge the Defendants' procedures and do not depend on any individualized facts. Defendants' notice and knowledge of the challenged reporting problem is the same for Plaintiffs as for the putative class members.

78. **Adequacy. FED. R. CIV. P. 23(a)(4).** Plaintiffs are adequate representatives of the Classes. Their interests are aligned with and are not antagonistic to, the interests of Class Members they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action and consumer litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class Members' interests.

79. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of this controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Class Members to effectively redress the wrongs done to them on an individual basis. Even if the Class Members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.     CLAIMS FOR RELIEF

**COUNT I**
**For LexisNexis's Violation of 15 U.S.C. § 1681e(b)**
**On Behalf of Plaintiff Ferrand and the Inaccurate Reporting Class**

80. Plaintiff Ferrand incorporates by reference all preceding paragraphs as alleged above.

81. LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff Ferrand and the Inaccurate Reporting Class members, specifically by reporting as insurance claims LexisNexis knew or should have known were not actually insurance claims.

82. As a result of LexisNexis's misconduct, Plaintiff Ferrand and the Class members suffered higher insurance rates, damages to their reputations, reductions to credit scores, and increased risk of insurance denial.

83. At all times pertinent hereto, LexisNexis's conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard of consumers' rights as set forth in section 1681e(b) of the FCRA.

84. Pursuant to 15 U.S.C. §§ 1681n and o, LexisNexis is liable to Plaintiff Ferrand and the Class members for its failure to comply with FCRA § 1681e(b), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT II
### For LexisNexis's Violation of 15 U.S.C. § 1681i
### On Behalf of Plaintiff Ferrand and the Disputes Class

85. Plaintiff Ferrand incorporates by reference all preceding paragraphs as alleged above.

86. LexisNexis violated 15 U.S.C. § 1681i by failing to "conduct a reasonable reinvestigation to determine whether the disputed information [wa]s accurate" of the disputes

submitted by the Disputes Class.  LexisNexis knew or should have known that the disputed claims were not actual insurance claims, but it persisted in reporting them regardless.

87. As a result of LexisNexis' misconduct, Plaintiff Ferrand and the Class members suffered higher insurance rates, damages to their reputations, reductions to credit scores, and increased risk of insurance denial.

88. At all times pertinent hereto, LexisNexis' conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard of consumers' rights as set forth in section 1681i of the FCRA.

89. Pursuant to 15 U.S.C. §§ 1681n and o, LexisNexis is liable to Plaintiff Ferrand and the Dispute Class members for its failure to comply with FCRA § 1681i, in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT III
### For Geico's Violation of 15 U.S.C. § 1681s-2(b)
### On Behalf of Plaintiffs Ferrand and Woodward and the Unreasonable Investigation Class

90. Plaintiffs Ferrand and Woodward incorporate by reference all preceding paragraphs as alleged above.

91. Geico violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of the disputes submitted by the Disputes Class.  Geico had actual knowledge that the claims it had reported to LexisNexis were not genuine claims, but it told LexisNexis otherwise in response to Class Members' disputes.

92. As a result of Geico's misconduct, Plaintiffs and the Class members suffered higher insurance rates, damages to their reputations, reductions to credit scores, and increased risk of insurance denial.

93. At all times pertinent hereto, Geico's conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard of consumers' rights as set forth in section 1681s-2(b) of the FCRA.

94. Pursuant to 15 U.S.C. §§ 1681n and o, LexisNexis is liable to Plaintiffs and the Class members for its failure to comply with FCRA § 1681s-2(b), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

### VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes pray for relief as follows:

a. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

b. An award of actual, statutory and punitive damages for Plaintiffs and the Classes;

c. An award of pre-judgment and post-judgment interest as provided by law;

d. An award of attorney's fees and costs; and

e. Such other relief as the Court deems just and proper.

### VIII.   TRIAL BY JURY

Plaintiffs hereby request a jury trial.

        Respectfully submitted,
        **KYLE G. FARRAND**
        **ROBERT D. WOODWARD**

        By:   */s/ Kristi C. Kelly*
        Kristi C. Kelly, Esq. (No. 07244)
        KELLY GUZZO, PLC
        3925 Chain Bridge Road, Suite 202
        Fairfax, VA 22030
        (703) 424-7572
        (703) 591-0167 Facsimile
        Email: kkelly@kellyguzzo.com
        *Counsel for Plaintiffs*