IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT D. WOODWARD,   \*
on behalf of himself and all others
similarly situated,     \*

   Plaintiff,     \*

v.          \*   Civil Action No. GLR-21-952

GEICO ADVANTAGE INSURANCE \*
COMPANY,
           \*
   Defendant.

       \*\*\*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant GEICO Advantage Insurance Company's ("GEICO") Motion to Dismiss Plaintiff's Amended Complaint and Strike Class Allegations (ECF No. 35). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021).[1] For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

## I.  **BACKGROUND**[2]

### A. **Factual Background**

Plaintiff Robert D. Woodward files this Amended Class Action Complaint (the "Amended Complaint") on behalf of himself and others harmed by inaccurate statements

---

[1] The Court recognizes that Defendant has requested a hearing on the Motion. (See ECF No. 35-3). Having determined that no hearing is necessary to resolve the issues underlying the Motion, the Court will deny the request.

[2] Unless otherwise noted, the Court takes the following facts from the Amended Class Action Complaint (ECF No. 28) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

GEICO made on its website and to consumer reporting agencies. (Am. Class Action Compl. ["Am. Compl."] ¶¶ 5, 6, ECF No. 28). Among other things, GEICO inaccurately informed LexisNexis, a consumer-reporting agency, that Woodward had filed a "claim" against his GEICO auto insurance policy. (Id. ¶¶ 5, 11).

As background, Woodward explains that LexisNexis offers a variety of data products to its customers, including a product called the Comprehensive Loss Underwriting Exchange Auto Report ("CLUE Report"), which provides information about consumers' automobile insurance claims. (Id. ¶ 11). The CLUE Report is a consumer report governed by the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). (Am. Compl. ¶ 11). Almost all auto insurance companies, including GEICO, report information to the CLUE database and rely on CLUE reports to underwrite insurance policies and determine a consumer's insurance premium. (Id. ¶¶ 12, 13). A CLUE Report showing a history of claims will likely lead to a higher premium. (Id. ¶ 15). As required by the FCRA, when a customer contacts LexisNexis to dispute information on their CLUE Report, LexisNexis forwards that dispute to the furnisher of the information. (Id. ¶ 22).

On its website, GEICO defines a "claim" as "[a]ny request or demand for payment under the terms of the insurance policy." (Id. ¶ 19). Notwithstanding this definition, GEICO "has an established policy and procedure of reporting all inquiries regarding potential claims to LexisNexis, as if they were actual claims." (Id. ¶ 17). In other words, if a GEICO customer contacts GEICO to ask about a deductible, GEICO reports that to LexisNexis as a "claim." (Id. ¶ 18). When GEICO receives a report of a dispute from LexisNexis, GEICO "does not conduct any substantive review, such as listening to

telephone recordings or reviewing other substantive documents, to determine if the information in its system is accurate when it receives a consumer dispute from LexisNexis." (Id. ¶ 24). Instead, GEICO "follows a standard . . . process in which it only reviews its own internal computer screen for the claim information and repeats back the same information that was previously reported to LexisNexis." (Id. ¶ 23).

On July 25, 2018, while living in New Mexico, Woodward contacted GEICO, then his auto insurer, "to ask about the deductible on his car because there was a scratch on his bumper." (Id. ¶ 26). After speaking to a GEICO representative, Woodward decided not to file a claim and did not make a "request or demand for payment under the terms of [his] insurance policy." (Id. ¶¶ 19, 27, 31). GEICO nevertheless reported the inquiry to LexisNexis as a "claim" made against Woodward's insurance policy for an at-fault accident. (Id. ¶ 28). Woodward's CLUE Report thus appeared to reflect that he was involved in a collision on July 25, 2018, that was his fault. (Id. ¶ 30).

In February 2020, Woodward sought a new insurance policy and received several quotes. (Id. ¶ 33). Woodward found the quoted rates high and inquired with the insurance companies as to why that was the case. (Id. ¶ 34). The insurance companies disclosed to Woodward that his CLUE Report showed he had been involved in an at-fault accident in July 2018. (Id. ¶¶ 34, 35).

Woodward obtained his CLUE Report and, in April 2020, disputed the July 2018 "claim" and asked that all information relating to the July 2018 inquiry be deleted from the claim records section of his report. (Id. ¶¶ 36–39). LexisNexis forwarded the dispute to GEICO. (Id. ¶ 40). In response, GEICO did not review its internal notes regarding

3

Woodward's July 2018 inquiry, which reflected a "final decision indicator" of "not filing." (Id. ¶¶ 42, 43). Instead, GEICO responded that the disputed information was accurate and refused to remove the information from Woodward's CLUE Report. (Id. ¶ 44). Woodward later submitted a second dispute and GEICO again "refused to conduct a meaningful investigation" or remove the information from the CLUE Report. (Id. ¶¶ 45–47). Woodward alleges that as a result of GEICO's failure to investigate, he "suffered actual damages, including increased rates on his insurance policy renewal, damage to reputation, and emotional distress." (Id. ¶ 48).

**B.     Procedural History**

On April 16, 2021, Woodward and Kyle G. Ferrand filed this class action lawsuit against GEICO and LexisNexis Risk Solutions, Inc. ("LexisNexis") (ECF No. 1). GEICO filed a Motion to Dismiss Plaintiffs' Complaint and Strike Class Allegations on July 12, 2021. (ECF No. 21). On July 22, 2021, Ferrand filed a Stipulation of Dismissal of all his claims, which included the only claims against LexisNexis. (ECF No. 22). The Court approved the Stipulation of Dismissal and terminated Ferrand and LexisNexis as parties the following day. (ECF No. 23).

Rather than oppose GEICO's initial Motion to Dismiss, Woodward filed an Amended Complaint on August 9, 2021. (ECF No. 28). The two-count Amended Complaint alleges: violation of the FCRA, 15 U.S.C. § 1681s-2(b), on behalf of Woodward and the Unreasonable Investigation Class[3] (Count I); and violation of the New Mexico

---

[3] The proposed classes are defined and discussed in more detail infra in Section II.B.4.

4

Unfair Practices Act, N.M. Stat. Ann. § 57-12-3 (the "UPA"), on behalf of Woodward and the UPA Class (Count II). (Am. Compl. ¶¶ 63–79). The Amended Complaint also identifies three classes on behalf of which Woodward is asserting claims: (1) the Unreasonable Investigation Class, brought under Federal Rule of Civil Procedure 23(b)(3); (2) the UPA Class, brought under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3); and (3) the UPA Damages Sub-Class, brought under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (Id. ¶¶ 53–55). Woodward seeks actual, statutory, treble, and punitive damages; injunctive relief; attorneys' fees and costs; pre- and post-judgment interest; and certification of the proposed classes. (Id. at 14–15).

On October 5, 2021, GEICO filed a Motion to Dismiss Plaintiff's Amended Complaint and Strike Class Allegations (ECF No. 35). On November 2, 2021, Woodward filed an Opposition (ECF No. 40), and on November 29, 2021, GEICO filed a Reply (ECF No. 47).

## II.  DISCUSSION

### A.  Standard of Review

#### 1.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject-matter jurisdiction. See CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011); Akers v. Md. State Educ. Ass'n, 376 F.Supp.3d 563, 569 (D.Md. 2019). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction "challenges a court's authority to hear the matter brought by a complaint." Akers, 376 F.Supp.3d at 569. Under Rule 12(b)(1), "the plaintiff bears the

burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." Id. (first citing Demetres v. E. W. Const., Inc., 776 F.3d 271, 272 (4th Cir. 2015); and then citing Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)).

Defendants challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When, as here, the defendants raise a facial challenge, the Court affords the plaintiffs "the same procedural protection" they would receive on a Rule 12(b)(6) motion to dismiss. Wikimedia Found. v. NSA, 857 F.3d 193, 208 (4th Cir. 2017) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction. See id.

### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

Through its Motion, GEICO advances several challenges to the Amended Complaint, including: (1) Woodward lacks standing because he has failed to plead an injury-in-fact fairly traceable to GEICO; (2) Woodward fails to state a claim under the FCRA for which relief may be granted; (3) Woodward fails to state a claim under the UPA for which relief may be granted; and (4) the Court should strike Woodward's class

allegations. (Mem. Supp. Def.'s Mot. Dismiss Pl.'s Am. Compl. & Strike Class Allegations ["Mot."] at 8–34, ECF No. 35-1). Each challenge contains a host of sub-arguments in support. The Court will address each argument in turn.

### 1.      Standing

GEICO's first argument is that Woodward lacks standing to bring this lawsuit at all because he has failed to sufficiently plead an injury-in-fact fairly traceable to GEICO. (Mot. at 8). At bottom, the Court finds that Woodward has sufficiently pleaded one or more injuries traceable to GEICO and will decline to dismiss on this basis.

GEICO asserts that the only tangible harm Woodward allegedly suffered is "increased rates on his insurance policy renewal," which he alleges was the "result" of GEICO's "misconduct." (Id. at 9; see Am. Compl. ¶¶ 48, 65, 77). Some background on the FCRA is necessary to understand GEICO's standing argument. Woodward has specifically accused GEICO of conducting an "unreasonable investigation" of his dispute in violation of 15 U.S.C. § 1681s-2(b), a subsection of the FCRA that required GEICO to:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . ;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . promptly--
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

The FCRA imposes civil liability on individuals or companies who negligently or willfully fail to comply with its terms. 15 U.S.C. §§ 1681n, 1681o. Importantly, however, there is no private right of action under the FCRA against a furnisher for reporting inaccurate information in the first instance. See 15 U.S.C. § 1681s-2(c)(1) (establishing that the FCRA's civil liability sections do not apply to violation of § 1681s-2(a)). Rather, it is the furnisher's failure to investigate a dispute as required by § 1681s-2(b) that creates a private right of action.

GEICO notes that, as set forth above, its statutory obligation under the FCRA was only triggered after it received a dispute notice from LexisNexis. (Mot. at 9); see 15 U.S.C. § 1681s-2(b)(1). Thus, GEICO argues, "[h]igher quotes received before GEICO's FCRA obligations were triggered cannot be attributed to GEICO's alleged FCRA violations." (Mot. at 9). In other words, because Woodward's quoted rates were high before GEICO conducted its inquiry, any continuation of those high rates cannot form the basis for liability on GEICO's part.

As an initial matter, the Court rejects GEICO's argument as creating an untenable practicability hurdle for § 1681s-2(b) claims. An auto insurance consumer will almost invariably only review their CLUE Report after learning it contains information they perceive as inaccurate. If the preexisting high rates caused by that inaccurate information insulate an insurer from liability for causing a continuation of those high rates by refusing to conduct a proper investigation, insurers would have virtual impunity for inaccurate information on consumers' CLUE Reports. Congress cannot have intended such an absurd

result. See Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001) (empowering courts to look beyond the plain meaning of a statute where a literal application either "produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary" or "results in an outcome that can truly be characterized as absurd").

Woodward alleges that "[a]fter Geico refused to properly investigate Plaintiff's dispute, Plaintiff suffered actual damages, including increased rates on his insurance policy renewal, damage to reputation, and emotional distress." (Am. Compl. ¶ 48). This is sufficient at the pleading stage to establish that GEICO's failure to comply with its § 1681s-2(b) duties caused him financial and other harm. Accordingly, the Court declines to dismiss on the basis.[4]

With respect to Woodward's UPA claim, "as long as a plaintiff can establish Article III standing in federal court, the plaintiff may bring a New Mexico UPA claim" regardless of whether that claim caused the plaintiff to suffer damages. Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 708 F.Supp.2d 1209, 1256 (D.N.M. 2010). Because the Court finds that Woodward has adequately pleaded standing with respect to his FCRA claim, GEICO's standing challenge must fail with respect to the UPA claim.

---

[4] GEICO devotes several pages of its Motion to challenging Woodward's standing with respect to each of his claims of damages under the FCRA. (See Mot. at 8–13). The Court declines to allow GEICO's standing challenge to serve as a vehicle to backdoor an impermissible Rule 12(b)(6) challenge to shrink the universe of available damages. Woodward has plausibly pleaded an injury-in-fact—that ends the Court's standing inquiry.

2.      **FCRA**

GEICO argues that Woodward's FCRA claim must fail on three bases: (1) Woodward has failed to adequately plead an inaccuracy; (2) Woodward has failed to adequately plead a failure to investigate; and (3) Woodward's "willfulness" allegations are insufficient. (Mot. at 13–18). The Court will address each argument in turn.

a.      **Woodward adequately pleads an inaccuracy.**

"[A] threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 629 (6th Cir. 2018); see also Alston v. Wells Fargo Home Mortg., No. TDC-13-3147, 2016 WL 816733, at *10 (D.Md. Feb. 26, 2016) ("[A] plaintiff cannot prevail on a claim against a credit furnisher under 15 U.S.C. § 1681s-2(b) without 'a showing of actual inaccuracy.'" (quoting Chiang v. Verizon New England, Inc., 595 F.3d 26, 38 (1st Cir. 2010))). "[A] credit report is not accurate under [the] FCRA if it provides information in such a manner as to create a materially misleading impression." Saunders v. Branch Banking and Tr. Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008); see also Doss v. Great Lakes Educ. Loan Servs., Inc., No. 3:20-cv-45, 2021 WL 1206800, at *5 n.12 (E.D.Va. Mar. 30, 2021) ("[W]hile courts have found that accuracy may be a defense to FCRA claims, courts typically do not limit 'accuracy' to an inquiry of patent or technical inaccuracies alone.").

GEICO argues that Woodward "does not allege that any particular data point" it provided to LexisNexis was inaccurate because Woodward fails to allege that GEICO reported that Woodward made a request or demand for payment. (Mot. at 13–14). This

argument misses the mark. The entire premise of Woodward's FCRA claim is that, although Woodward did not file an insurance claim, GEICO reported him as having made one. (See, e.g., Am. Compl. ¶ 19 (alleging that on its website, GEICO defines a claim as "[a]ny request or demand for payment under the terms of the insurance policy"); ¶ 28 ("Geico reported this inquiry as a 'claim' made against Plaintiff's Woodward's insurance policy for an at fault accident."); ¶ 31 ("Plaintiff Woodward never made a claim against his Geico insurance policy for this incident because he never made a demand or request to Geico for payment under the terms of his insurance policy."); ¶ 37 ("[T]he information in the C.L.U.E. auto report—that Plaintiff Woodward had made a 'claim'—was inaccurate because Plaintiff Woodward did not make a request or demand for payment under the terms of his Geico insurance policy on or around July 25, 2018.")). GEICO's report to LexisNexis therefore "provide[d] information in such a manner as to create a materially misleading impression." Saunders, 526 F.3d at 148. In other words, the very fact of GEICO's report that Woodward made a "claim" is itself the inaccuracy. No additional inaccuracy within that report is required. Accordingly, the Court finds that Woodward adequately pleaded an inaccuracy for the purposes of his FCRA claim.

**b.    Woodward adequately pleads a failure to investigate.**

When a furnisher receives notice of a consumer dispute from a credit reporting agency, that triggers the furnisher's obligation "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004). Woodward argues that GEICO's records included internal notes regarding Woodward's July 2018 inquiry

12

reflecting a "final decision indicator" of "not filing." (Am. Compl. ¶¶ 42, 43). GEICO argues that Woodward "never explains how this note bears on the accuracy or completeness of the information GEICO actually reported." (Mot. at 15). Accordingly, GEICO argues that its failure to correct its report on the basis of this note does not constitute a failure to investigate. (Id. at 16).

As set forth above, Woodward alleges that he did not file a "claim" as defined by GEICO, that GEICO's records indicated the same, and that GEICO's report to LexisNexis indicated that Woodward had filed a claim. (Am. Compl. ¶¶ 28, 31, 37, 42, 43). After Woodward disputed the report, GEICO responded that the disputed information was accurate and refused to remove the information from Woodward's CLUE Report. (Id. ¶ 44). Inasmuch as Woodward has alleged an inaccuracy that is reflected by GEICO's records, "a jury could reasonably conclude that if the [defendant's] agents had investigated the matter further . . . they could have at least informed the credit reporting agencies that [the defendant] could not conclusively verify" the information. Johnson, 357 F.3d at 432. In other words, when GEICO "discovered that the information it reported was inaccurate," it should have "trigger[ed] [GEICO's] obligation to correct the information." Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018). Its failure to correct the information may logically imply its failure to investigate. Accordingly, the Court finds that Woodward has adequately pleaded a failure to investigate.

### c.   Woodward adequately pleads willfulness.

The FCRA imposes certain forms of liability on those who willfully fail to comply with its requirements. 15 U.S.C. § 1681n(a). GEICO cites one decade-old, unpublished

case from this Court for the proposition that "to avoid dismissal, plaintiffs asserting that a defendant willfully failed to comply with the FCRA must set forth specific allegations to demonstrate willfulness." Singleton v. Domino's Pizza, LLC, No. DKC-11-1823, 2012 WL 245965, at *4 (D.Md. Jan. 25, 2012); (see Mot. at 16–17).

That same decision, however, also states that "assertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal." Singleton, 2012 WL 245965, at *4; accord Martin v. Fair Collections & Outsourcing, Inc., No. GJH-14-3191, 2015 WL 4064970, at *4 (D.Md. June 30, 2015). This holding aligns with the lion's share of cases to consider the pleading requirements for claims alleging a willful violation of the FCRA.[5]

---

[5] See Moody v. Ascenda USA Inc., No. 16-CV-60364-WPD, 2016 WL 4702681, at *4 (S.D.Fla. July 1, 2016) ("[T]he Court finds that Plaintiff has sufficiently alleged willfulness at the motion to dismiss stage, having alleged facts supporting its position that Defendant was aware of its duties under the FCRA yet failed to comply with the statute's requirements."); Milne v. Sears Holdings Corp., No. 15-CV-05551-JST, 2016 WL 1660163, at *4 (N.D.Cal. Apr. 26, 2016) (finding allegations that defendant "was aware of the requirements of [the FCRA]" and had "certified . . . that it would comply with [the FCRA]" are sufficient to "conclude[] that Plaintiff adequately alleges that [the defendant] willfully violated the FCRA"); Avila v. NOW Health Grp., Inc., No. 14 C 1551, 2014 WL 3537825, at *3 (N.D.Ill. July 17, 2014) (finding that allegations that defendant "willfully breached the FCRA because it 'violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)' and that its conduct is 'contrary to long-standing regulatory guidance and caselaw'" were "sufficient to allege a knowing or reckless violation of the FCRA"); Augustin v. Equable Ascent Fin., No. 12CV6069CBAVMS, 2014 WL 12770208, at *5 (E.D.N.Y. Jan. 30, 2014) ("[C]ourts have found pleadings of willfulness adequate when they contain allegations that the defendant disregarded the FCRA to advance its own business goals. Plaintiffs have also successfully pled willfulness when the defendant disregarded FCRA provisions that were well publicized or otherwise would have been known to the defendant." (footnote omitted)).

One two-year-old case from another court in this circuit examined allegations similar to

those at issue in this case:

> [A]nother judge of this Court has previously considered how a
> plaintiff can successfully allege a willful violation of the FCRA
> and found, after a review of district court cases, that "[f]or the
> purposes of a Rule 12(b)(6) motion to dismiss, courts have
> found a plaintiff sufficiently pleads willfulness or recklessness
> when he or she asserts that a defendant has repeatedly violated
> [the] FCRA or was aware of [the] FCRA's requirements but
> failed to comply." <u>Jones</u>, 2015 WL 5092514, at *3 (emphasis
> added) (citing cases). The <u>Jones</u> opinion further noted that
> "[w]hether an act was done with knowing or reckless disregard
> for another's rights remains a fact-intensive question." <u>Id.</u>
> (quotation and citation omitted).
>
> Here, Plaintiff alleges that Chase is "aware of [its] duties under
> the [FCRA], including how [the FCRA] is interpreted and
> enforced within the geographical confines of the Fourth Circuit
> Court of Appeals" and that Chase "is aware of its obligations
> to conduct reasonable investigations of disputes according to
> Johnson [ ], 357 F.3d 426." Compl. ¶ 63. Despite being aware
> of these well-established duties, which are in published Fourth
> Circuit precedent, Plaintiff alleges that Chase willfully failed
> to comply with its obligations under 15 U.S.C. § 1681s-2(b).
> <u>See id.</u> ¶¶ 90, 93. As such, Plaintiff has sufficiently alleged a
> willful violation of 15 U.S.C. § 1681s-2(b) against Chase
> regarding the Chase Account for the purpose of deciding the
> motion to dismiss.

<u>Denton v. JPMorgan Chase & Co.</u>, No. 4:19CV114, 2020 WL 5909153, at *10 (E.D.Va.

Oct. 6, 2020). These allegations mirror those in the Amended Complaint. (<u>See</u> Am. Compl.

¶ 50 (alleging that although "[t]he FCRA was enacted in 1970" and GEICO "knew or had

reason to know that its conduct was inconsistent with FTC guidance, case law, and the

plain language of the FCRA," there was "no contemporaneous evidence that it determined

that its conduct was lawful")). The Court finds the reasoning of the District Court of the

Eastern District of Virginia persuasive. Accordingly, the Court finds that Woodward has adequately pleaded willfulness for the purpose of his FCRA claim.

**3.     UPA**

A plaintiff seeking to plead a cause of action under the UPA must sufficiently allege that the defendant engaged in an unfair or deceptive trade practice as defined in N.M. Stat. Ann. § 57-12-2(D). New Mexico courts have held that plaintiffs must establish the following to prevail on a claim brought under the UPA:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 166 P.3d 1091, 1093 (N.M.Ct.App. 2007). GEICO argues that Woodward's UPA claim must fail for the following reasons: (1) Woodward has failed to allege a false or misleading statement; (2) Woodward has failed to adequately plead that GEICO's website definition of "claim" was made in connection with GEICO's sale of automobile insurance; (3) Woodward has failed to allege that GEICO's website definition of "claim" may, tends to, or does deceive or mislead; and (4) Woodward has failed to sufficiently plead a right to the various forms of relief available under the UPA. (Mot. at 19–23). The Court will address each argument in turn.

**a.     Woodward sufficiently alleges a false or misleading statement.**

GEICO first argues that Woodward's claim must be dismissed because Woodward fails to articulate why or how the website definition of "claim" is linked to or in some way

limits the information GEICO may report. But Woodward's UPA claim is straightforward. GEICO states on its website that a "claim" is a policyholder's request or demand for payment under the insurance policy. (Am. Compl. ¶ 19). Woodward alleges that statement is misleading because, in fact, GEICO considers <u>any</u> inquiry about an accident to be a claim, even where no request or demand for payment is made. (<u>Id.</u> ¶ 51). Thus, the report to LexisNexis, in which GEICO described Woodward's inquiry as a "claim," is evidence of the misleading nature of the definition on GEICO's website. Further, New Mexico courts have held that "generally the question [on whether a statement is deceptive or misleading] is a matter of fact" best left to the factfinder, not the Court. <u>N.M. ex rel. Balderas v. Real Est. L. Ctr., P.C.</u>, 401 F.Supp.3d 1229, 1316 (D.N.M. 2019) (quoting <u>Guidance Endodontics, LLC v. Dentsply Int'l, Inc.</u>, 728 F.Supp.2d 1170, 1192–93 (D.N.M. 2010)). In the Court's view, Woodward's allegations that GEICO made a false or misleading statement are sufficient to survive a challenge at the pleading stage.

> **b.    Woodward adequately pleads that GEICO's website definition of "claim" was made in connection with GEICO's sale of automobile insurance.**

As set forth above, to state a claim under the UPA, a plaintiff must plead that the defendant made a false or misleading statement "in connection with the sale . . . of . . . services." N.M. Stat. Ann. § 57-12-2(D). GEICO argues that Woodward has not alleged that the website definition of "claim" existed when he purchased his GEICO policy, and therefore the definition was not made in connection with GEICO's sale of automobile insurance. <u>See</u> <u>Swinney v. State Farm Fire & Cas. Co.</u>, No. CIV.A. 10-2021-CM, 2010 WL 5391217, at *1 (D.Kan. Dec. 21, 2010) ("Because plaintiff does not claim

that defendant made misrepresentations at the time plaintiff purchased the insurance contract, the court grants summary judgment on this claim."). But Swinney addressed a case in which the plaintiff attempted to bring a UPA claim on the basis of a breach of contract—a far cry from the facts at bar.

In the Court's view, GEICO's argument that Woodward need have pleaded a contemporaneous misrepresentation to support his UPA claim misapprehends a plaintiff's burden under the UPA and appears to attempt to introduce a causation requirement that does not exist. Certainly no such requirement is apparent within the three Lohman factors. See 166 P.3d at 1093. And as set forth above, "as long as a plaintiff can establish Article III standing in federal court, the plaintiff may bring a New Mexico UPA claim" regardless of whether that claim caused the plaintiff to suffer damages. Guidance Endodontics, 708 F.Supp.2d at 1255–56. Accordingly, the Court declines to dismiss Woodward's UPA claim on this basis.

### c.   Woodward adequately pleads that GEICO's website definition of "claim" may, tends to, or does deceive or mislead.

GEICO next argues that Woodward fails to plead that it made a false or misleading statement "that may, tends to or does deceive or mislead any person." N.M. Stat. Ann. § 57-12-2(D). In support of this assertion, GEICO argues that Woodward "does not even plead that he was deceived by the website definition of 'claim.'" (Mot. at 20). But as the plain language of the statute suggests, "[t]he UPA does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only tends to deceive." Lohman, 166 P.3d at 1098 (quoting Smoot v. Physicians Life Ins. Co., 87 P.3d

545, 550 (N.M.Ct.App. 2003) (internal quotation marks omitted)). Accordingly, GEICO's argument is beside the point. To the extent GEICO argues that Woodward has failed to plead that its website definition of "claim" <u>may</u> deceive a consumer, the Court disagrees. Woodward has satisfactorily alleged that the contradiction between the definition of "claim" on GEICO's website and the category of "claims" it reports to LexisNexis renders that definition potentially misleading. The Court will not dismiss Woodward's UPA claim on this ground.

### d.   Woodward's failure to plead a right to one or more forms of relief available under the UPA does not require dismissal.

GEICO advances a series of arguments through its Motion as to why Woodward is not entitled to the requested remedies of injunctive relief, actual damages, and treble or statutory damages under the UPA. (<u>See</u> Mot. at 20–23). Woodward declines to substantively contest GEICO's argument, instead countering that "[s]uch remedies . . . are not subject to a Rule 12(b)(6) challenge." (Opp'n at 21). In one sense, Woodward is correct. This Court has held that it "should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to any relief the court can grant, even if that relief is not specifically requested." <u>Int'l Fid. Ins. Co. v. Mahogany, Inc.</u>, No. JKB-11-1708, 2011 WL 3055251, at *2 n.1 (D.Md. June 25, 2011). "Any doubt on this score is dispelled by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings." <u>Charles v. Front Royal Volunteer Fire & Rescue</u>, 21 F.Supp.3d 620, 629 (W.D.Va. 2014) (quoting <u>Bontkowski v. Smith</u>, 305 F.3d 757, 762 (7th Cir. 2002)).

But a plaintiff is still obligated to advance allegations that entitle him to <u>some</u> relief. <u>See</u> <u>Burt v. Maasberg</u>, No. ELH-12-0464, 2014 WL 1291834, at *30 (D.Md. Mar. 28, 2014) ("[D]ismissal of [a count] for plaintiffs' selection of an improper remedy is inappropriate, so long as some other remedy is available."). Thus, as a general rule, Woodward is incorrect that a plaintiff's entitlement to a remedy is entirely immaterial to a court's analysis on a Rule 12(b)(6) motion.

Further, the Court finds that GEICO's arguments that Woodward fails to plausibly allege an entitlement to any form of damages under the UPA—arguments that, again, Woodward did not substantively contest—are largely persuasive and well-supported. First, Woodward's allegations ostensibly entitling him to injunctive relief are conclusory. The UPA provides the courts authority to grant an injunction in favor of "[a] person likely to be damaged by an unfair or deceptive trade practice." N.M. Stat. Ann. § 57-12-10(A). In the Amended Complaint, Woodward alleges simply that he is "likely to suffer damage[s] as a result of Geico's [UPA] violations." (Am. Compl. ¶ 79). This is precisely the sort of "[t]hreadbare recital[] of the elements of a cause of action" that the Supreme Court has found insufficient to survive a Rule 12(b)(6) challenge. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

Woodward's claim for actual damages under the UPA is similarly unsuccessful. To recover actual damages under the statute, a plaintiff must allege that the defendant's false or misleading statement caused him to suffer actual damages. <u>Chavarria v. Fleetwood Retail Corp.</u>, 115 P.3d 799, 810 (N.M.Ct.App. 2005), <u>aff'd in part, rev'd in part on other grounds</u>, 140 N.M. 478 (2006). The Amended Complaint is devoid, however, of allegations that GEICO's website definition of "claim" caused Woodward to suffer actual damages.

One way Woodward may have satisfied this element would have been by alleging reliance—i.e., that he relied on the website definition of "claim" in deciding to make the deductible inquiry that ultimately led to the disputed report. But Woodward makes no such allegation. Simply put, there is no allegation in the Amended Complaint—conclusory or otherwise—that the website definition of "claim" <u>caused</u> Woodward to suffer damages. Accordingly, Woodward has not plausibly alleged an entitlement to actual damages.

The Court does find, however, that Woodward has plausibly alleged an entitlement to "three times actual damages or $300" under N.M. Stat. Ann. § 57-12-10(B). That provision permits an award "[w]here the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has <u>willfully engaged</u> in the trade practice." <u>Id.</u> (emphasis added). Of course, Woodward cannot establish an entitlement to "treble damages" in the absence of actual damages, but he may be entitled to statutory damages of $300 if he otherwise satisfies the statutory standard.

New Mexico courts have provided that "[g]iven the material difference in the available remedies, it is clear that the Legislature contemplated proof of some culpable mental state to demonstrate 'willfulness.'" <u>Atherton v. Gopin</u>, 340 P.3d 630, 641 (N.M.Ct.App. 2014). Thus, to establish willfulness under the UPA, a plaintiff must prove "the intentional doing of an act with knowledge that harm may result." <u>Id.</u> (quoting N.M.R.A. Universal Jury Instr. ["UJI"] 13-1827). Here, Woodward alleges that GEICO "knew that it would report inquiries regarding potential coverage as claims even if no request or demand for payment was made because of the uniform policies and procedures that it adopted" but nevertheless "told consumers and the public at large that only requests

or demands for payment were considered 'claims' on its website." (Am. Compl. ¶ 51). In the Court's view, these allegations are sufficient at the pleading stage to establish a potential entitlement to statutory damages of $300.

Regardless of the Court's determination regarding Woodward's entitlement to the various remedies under the UPA, the Court would decline to dismiss his UPA claim on this basis. As set forth above, "as long as a plaintiff can establish Article III standing in federal court, the plaintiff may bring a New Mexico UPA claim" regardless of whether that claim caused the plaintiff to suffer damages. <u>Guidance Endodontics</u>, 708 F.Supp.2d at 1255–56. Thus, specifically for the purposes of his individual UPA claim, Woodward need not establish an entitlement to individual forms of damages available under the statute in order for his claim to survive. The Court will therefore deny GEICO's Motion as to Woodward's individual UPA claim.

### 4.   Class Allegations

The Amended Complaint proposes three classes: (1) the Unreasonable Investigation Class (Count I); (2) the UPA Class (Count II); and (3) the UPA Damages – Sub Class (Count II). These classes are defined as follows:

> Unreasonable Investigation Class:
>
> All natural persons that: (1) in the two years prior to the filing of this lawsuit (2) submitted a dispute to LexisNexis regarding Geico's reporting of an inquiry regarding insurance coverage as a "claim," (3) where Geico's records indicate that no claim was filed by the consumer; and (4) Geico responded to the dispute by verifying the claim information. . . .
>
> [UPA] Class:

> All natural persons that: (1) in the four years prior to the filing of this lawsuit (2) had a Geico auto insurance policy governed by New Mexico law. . . .
>
> [UPA] Damages Sub-Class:
>
> All natural persons that: (1) in the four years prior to the filing of this lawsuit (2) had a Geico auto insurance policy governed by New Mexico law; (3) where Geico's records indicate that the consumer contacted Geico regarding a potential claim but did not ultimately submit a claim; and (4) who suffered actual damages stemming from Geico's categorization of this inquiry as a claim.

(Am. Compl. ¶¶ 53–55). GEICO first argues that each class definition suffers from one or more of three fatal defects: (1) they are not precise, objective, or presently ascertainable; (2) they fail to identify any persons entitled to relief; and/or (3) they create improper fail-safe classes. (Mot. at 24–28). In addition, GEICO argues that Woodward fails to allege facts from which this Court can plausibly infer that Rule 23(a), (b)(2), and (b)(3) can be satisfied. (Id. at 28–34). The Court will review each argument in turn.

### a. Woodward's Class Definitions

#### i. The Unreasonable Investigation Class and UPA Damages Sub-Class definitions are sufficiently precise, objective, and presently ascertainable.

A prerequisite to maintaining a class action is the ability of the Court to "readily identify the class members in reference to objective criteria." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012).

GEICO argues that the references to the contents of GEICO's "records" in the Unreasonable Investigation Class and UPA Damages Sub-Class definitions mean that Woodward's and others' membership in the proposed classes, as well as GEICO's liability, would "require[] an individualized review of GEICO's internal notes." (Mot. at 24–25).[6] The Court disagrees. The reference in <u>Marcus</u> to "individualized fact-finding" does not mean that <u>any</u> non-formulaic review of the facts before certifying a member of the class creates an ascertainability problem. <u>See</u> <u>In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.</u>, No. 19-MD-2879, 2022 WL 1396522, at *7 (D.Md. May 3, 2022) ("[T]he need to review individual files to identify [class] members [is] not [a] reason[] to deny class certification." (quoting <u>Byrd v. Aaron's Inc.</u>, 784 F.3d 154, 171 (3d Cir. 2015))). Indeed, this Court has repeatedly permitted class action claims to proceed on the understanding that class membership determinations will require an evaluation of company records. <u>See</u> <u>id.</u>; <u>see also</u> <u>J.O.P. v. U.S. Dep't of Homeland Sec.</u>, 338 F.R.D. 33, 52–53 (D.Md. 2020) ("There is no need for extensive and individualized fact-finding . . . . Rather, by the time the inquiry occurs, the court need only to look to Defendants' records." (internal quotation marks and citations omitted)). Accordingly, the Court rejects GEICO's argument that Woodward's Unreasonable Investigation Class and UPA Damages Sub-Class claims are insufficiently precise, objective, or presently ascertainable.

---

[6] GEICO's references to the allegations of former Plaintiff Kyle Farrand—allegations absent from the Amended Complaint that is the subject of the Motion <u>sub judice</u>—are inappropriate and the Court will not consider them.

### ii. The UPA Class definition sufficiently identifies class members entitled to relief.

GEICO argues that the UPA Class must be stricken because "it includes class members who would not be entitled to any relief under the UPA." (Mot. at 26). Woodward responds by noting that, as set forth above, "[l]iability under the UPA . . . still attaches without entitlement to a remedy." (Opp'n at 25). GEICO counters that a plaintiff may not seek certification of a class whose definition includes members who are not entitled to a remedy. (Reply at 16); see Sanders v. Apple Inc., 672 F.Supp.2d 978, 991 (N.D.Cal. 2009) (striking the class claims, in part, because the class definition included "individuals who . . . would lack standing to bring these claims").

Due to the unusual nature of the UPA, the Court agrees with Woodward. While each class member will need to establish some form of harm to establish standing, that is a bridge to cross at the time of reviewing each class member, not now. Jien v. Perdue Farms, Inc., No. SAG-19-2521, 2021 WL 927456, at *2 (D.Md. Mar. 10, 2021) ("[T]he Court has held that class certification 'is logically antecedent to the existence of Article III [standing] issues, [thus] it is appropriate to reach them first[.]'" (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 612 (1997))). Further, as provided above, as long as an individual has standing, she can advance a UPA claim regardless of whether she has damages arising from the UPA violation. Thus, while GEICO is correct that each class member must be entitled to some remedy in order to have Article III standing, that standing may come, like that of Woodward, by dint of membership in the Unreasonable Investigation class.

The Court recognizes that in light of the potential standing issues articulated above, this class definition would need to be refined at the class certification stage. See Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012) ("Defining a class . . . is more of an art than a science[,] . . . and often should be solved by refining the class definition rather than by flatly denying class certification."). But the Court declines to strike the class allegation on this basis at the pleading stage.

### iii.    The Unreasonable Investigation Class is not an impermissible fail-safe class.

Next, GEICO argues that the Unreasonable Investigation Class must be stricken because it is an impermissible fail-safe class. "[A] fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" EQT Prod., 764 F.3d at 360 n.9 (quoting Messner, 669 F.3d at 825); Chado v. Nat'l Auto Inspects., LLC, No. JKB-17-2945, 2019 WL 1981042, at *4 (D.Md. May 3, 2019) (defining a fail-safe class as "one that requires a finding of liability before ascertaining whether an individual is a class member"). Fail-safe classes are improper because "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Randleman v. Fidelity Nat'l Title Ins., 646 F.3d 347, 352 (6th Cir. 2011).

GEICO argues that the Unreasonable Investigation Class is "inextricably tied to GEICO's ultimate liability" because:

> Class membership hinges on a determination that (1) the class member "submitted a dispute to LexisNexis regarding Geico's reporting of an inquiry regarding insurance coverage as a 'claim'"; (2) "Geico's records indicate no claim was filed by

> the consumer"; and (3) "Geico responded to the dispute by
> verifying the claim information."

(Mot. at 27 (quoting Am. Compl. ¶ 53)). GEICO thus asserts that "[c]lass membership . . . rests on whether GEICO verified inaccurate information" and, "[a]s such, membership is inextricably tied to GEICO's ultimate liability." (Id.).

The Court disagrees. As Woodward correctly notes, "after Plaintiff's class is ascertained, Plaintiff will need to prove that GEICO has liability as to the class because of its failure to investigate Plaintiff's and the class members' disputes." (Opp'n at 27). In other words, according to Woodward's theory of the case, GEICO violates the FCRA when it verifies claim information in instances where it reported a consumer's inquiry regarding insurance coverage as a "claim," but its own records indicate that no claim was filed by the consumer. However, the Court has not so concluded, and presumably GEICO does not concede the argument. Further, the Court makes no binding conclusions of law in this Opinion regarding whether GEICO's verification of claim information in such a situation necessarily means that GEICO has neglected to investigate disputes challenging such reporting. Accordingly, the Court rejects GEICO's argument that the Unreasonable Investigation Class is an impermissible fail-safe class.

### iv.   The UPA Damages Sub-Class is an impermissible fail-safe class.

GEICO further argues that the UPA Damages Sub-Class is an impermissible fail-safe class. The Court agrees. GEICO argues that membership in the UPA Damages Sub-Class "hinges on whether 'Geico's records indicate that the consumer contacted Geico regarding a potential claim but did not ultimately submit a claim; and . . . suffered actual

damages stemming from Geico's categorization of this inquiry as a claim.'" (Mot. at 27 (quoting Am. Compl. ¶ 55)). Woodward attempts to characterize this argument as asserting that "because membership in the sub-class hinges on actual damages, the sub-class must fail because one cannot obtain membership in the sub-class without having suffered damages." (Opp'n at 27). But as GEICO correctly notes, that is not the point; rather, this "is a fail-safe class because membership is inextricably tied to accuracy." (Reply at 16).

Ordinarily, the Court would give Woodward the opportunity to amend the class. See Messner, 669 F.3d at 825; see also Cummins v. Ascellon Corp., No. DKC-19-2953, 2020 WL 6544822, at *7 (D.Md. Nov. 6, 2020) ("Several courts have found that a 'fail-safe class definition' is not necessarily fatal in the Fed. R. Civ. P. 23 context."). For reasons set forth below, however, Woodward's UPA Damages Sub-Class also appears to suffer from serious Rule 23(a) problems relating to Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Accordingly, as explained infra in Section II.B.5, the Court will at this time strike Woodward's UPA Damages Sub-Class without prejudice to Woodward's ability to reassert a better-defined class prior to his motion for class certification.

> **b.    Rule 23(a) Objections**

For several reasons, GEICO asserts that Woodward has failed to sufficiently allege facts to satisfy Federal Rule of Civil Procedure 23(a). Specifically, GEICO asserts that Woodward has failed to adequately allege numerosity, commonality, typicality, and adequacy. (Mot. at 28–31). Again, the Court will analyze each argument in turn.

### i.      Woodward has adequately alleged numerosity.

The Amended Complaint alleges that "[u]pon information and belief, discovery will demonstrate that hundreds, if not thousands, of consumers disputed the inaccurate information that Geico was reporting about their insurance inquiries and were subjected to the same uniform dispute processing procedures" as Woodward. (Am. Compl. ¶ 57). According to GEICO, "[p]leading upon information and belief that discovery will demonstrate numerosity is the equivalent of stating that Plaintiff has no idea of the class size, and wants to use discovery as a fishing expedition to identify potential claims." (Mot. at 28). Accordingly, GEICO argues that Woodward's class allegations should be stricken for failing to adequately allege numerosity.

The Court is unpersuaded. "Where 'general knowledge and common sense' indicate the class is so large that joinder of all members is impracticable, the numerosity requirement is satisfied." Stanley v. Cent. Garden & Pet Corp., 891 F.Supp.2d 757, 770 (D.Md. 2012) (quoting Mitchell-Tracey v. United Gen. Title Ins., 237 F.R.D. 551, 556 (D.Md. 2006)). GEICO is a very large company insuring millions of individuals. Indeed, the Court takes judicial notice of a representation on GEICO's website, on which it asserts that it has "[m]ore than 18 million auto policies in force." GEICO, GEICO At A Glance, https://www.geico.com/about/corporate/at-a-glance/ (last visited June 22, 2022). Woodward alleges that GEICO systematically rejects disputes challenging its reporting. If this is true, and this policy affected just .01% of GEICO's customers in a manner consistent with the class definitions, that would create a potential class of 1,800 members. Thus, in

the Court's view, general knowledge and common sense suggest that the potential class in this case is so large that joinder of all members is impracticable.

>    ii.    **Woodward has adequately alleged commonality as to the Unreasonable Investigation Class.**

"Commonality requires that 'there are questions of law or fact common to the class.'" Williams v. Potomac Fam. Dining Grp. Operating Co., No. GJH-19-1780, 2019 WL 5309628, at *6 (D.Md. Oct. 21, 2019) (quoting Fed.R.Civ.P. 23(a)(2)). "For this requirement to be met, the proceeding must not only raise common questions, but must also be able 'to generate common answers apt to drive the resolution of the litigation.'" Id. (quoting Dukes, 564 U.S. at 350). "To satisfy the commonality prerequisite," however, "there need be only a single issue common to the class, and that issue need not predominate in the litigation." Williams v. Telespectrum, Inc., No. 3:05-cv-853, 2007 WL 6787411, at *4 (E.D.Va. June 1, 2007). "The commonality requirement is relatively easy to satisfy, and very few cases have been dismissed for failing to meet it." Buchanan v. Consol. Stores Corp., 217 F.R.D. 178, 187 (D.Md. 2003).

As set forth above, Woodward raises three common questions as to the Unreasonable Investigations Class: (1) "whether Geico failed to conduct a reasonable investigation of the class members' disputes"; (2) "whether this conduct violated the FCRA"; and (3) "whether the violations were willful." (Am. Compl. ¶ 58(a)). GEICO argues that whether it conducted a reasonable investigation is not capable of resolution on a classwide basis. Specifically, GEICO argues that "[b]ecause the reasonableness of GEICO's investigation into any given dispute must be measured against the notice

provided by LexisNexis, which will necessarily vary based on the information provided by the consumer, resolution of the reasonableness of GEICO's investigation cannot be resolved on a classwide basis." (Mot. at 29).

As Woodward explains in his Opposition, however, this argument misses the mark. "Plaintiff's class allegation is not that GEICO botched each investigation for reasons specific to the content of each individual dispute. Rather, Plaintiff alleges that GEICO botched all investigations because, as a matter of company policy, it does not review pertinent records when reviewing disputes like Plaintiff's." (Opp'n at 30). Thus, at least on the basis of the Amended Complaint, a granular review of GEICO's investigation into each such dispute does not appear necessary. Accordingly, the Court will not strike the Unreasonable Investigation Class on this basis.

### iii.   Woodward has failed to adequately allege typicality and adequacy as to the UPA Class or the UPA Damages Sub-Class.[7]

As set forth above, the UPA Damages Sub-Class will already be stricken without prejudice as an impermissible fail-safe class. GEICO argues that the Court must also strike the UPA Class and the UPA Damages Sub-Class for failure to plausibly allege typicality and adequacy. The Court agrees.

"Typicality requires that the claims of the named class representatives be typical of those of the class; a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Lienhart v. Dryvit Sys. Inc., 255

---

[7] GEICO does not appear to advance a typicality and adequacy argument as to the Unreasonable Investigation Class.

F.3d 138, 146 (4th Cir. 2001) (cleaned up). A class representative who lacks standing to raise the legal claims of the class is atypical. Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).

The issue Woodward faces with respect to typicality and adequacy is that he has failed to articulate an entitlement to relevant damages for his UPA claim. The Supreme Court has provided that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Dukes, 564 U.S. at 348–49 (emphasis added) (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). Indeed, this Court has in the past dismissed a class action on a 12(b)(6) motion upon finding that the class representative failed to allege commonality and typicality because he had not adequately alleged that he suffered a similar injury to the class members. See Pelino v. Ward Mfg., LLC, No. RDB-14-02771, 2015 WL 4528141, at *4 (D.Md. July 27, 2015). Other courts in this circuit have done the same. See, e.g., Thornhill v. Aylor, No. 3:15-CV-00024, 2016 WL 8737358, at *14–15 (W.D.Va. Feb. 19, 2016).

Here, as set forth in Section II.B.3.d, supra, the only type of damages Woodward has pleaded an entitlement to under the UPA is statutory damages of $300. But "[i]n any class action filed under [the UPA], the court may award [statutory] damages to the named plaintiffs . . . and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice." N.M. Stat. Ann. § 57-12-10(E); see also Brooks v. Norwest Corp., 103 P.3d 39, 53 (N.M. 2004) ("[A]ny relief realized by class members is limited to actual damages; they are barred from collecting statutory or treble damages." (emphasis added)). Thus, Woodward cannot

establish that he "suffered the same injury" as any class members when he has not alleged an entitlement to <u>any</u> remedies under the UPA to which other class members may be entitled. Under <u>Dukes</u>, this deficiency in the Amended Complaint is fatal, and both Woodward's UPA classes must fail on typicality and adequacy grounds. For the reasons discussed <u>infra</u> in Section II.B.5, however, the Court will strike those classes without prejudice to Woodward's ability to file a second amended complaint in conjunction with his motion to certify that remedies the deficiencies identified herein.

  **c.**  **Rule 23(b)(3) Objections**

  Woodward brings all three class claims under Federal Rule of Civil Procedure 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[8] The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. <u>Stanley</u>, 891 F.Supp.2d at 771 (quoting <u>Amchem Prods.</u>, 521 U.S. at 623–24). "It tests 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" <u>Id.</u> (quoting <u>Amchem Prods.</u>, 521 U.S. at 623).

---

  [8] The Court declines to include a lengthy Rule (23)(b)(3) analysis as to the UPA classes because the Court has already decided to strike those classes on other grounds. However, for the same reasons the Court finds that Woodward has failed to allege typicality and adequacy as to the UPA classes, the Court also finds that Woodward has failed to allege predominance. <u>See</u> <u>Bezek v. First Mariner Bank</u>, No. SAG-17-2902, 2020 WL 5877159, at *5 n.2 (D.Md. Oct. 2, 2020) ("The typicality and adequacy requirements tend to merge with commonality." (internal quotation marks and citations omitted)); <u>Gariety v. Grant Thornton, LLP</u>, 368 F.3d 356, 362 (4th Cir. 2004) ("Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement[.]" (quoting <u>Amchem Prods.</u>, 521 U.S. at 623–24)).

GEICO argues that Woodward's Unreasonable Investigation Class claim must fail because "GEICO's liability under FCRA to any given putative class member will rest on several individualized inquiries," including, inter alia, "[t]he reasonableness of GEICO's investigation of any consumer dispute received from LexisNexis as measured against the nature of LexisNexis's notice," "[t]he accuracy of the disputed data points," and "[w]hether any inaccurate information was modified." (Mot. at 32). In his Amended Complaint, however, Woodward plainly identifies the common issues of law and fact that may be resolved on a class basis: "whether Geico failed to conduct a reasonable investigation of class members' disputes; whether this conduct violated the FCRA; and whether the violations were willful." (Am. Compl. ¶ 58). Woodward explains in his Opposition that more specifically, he alleges several "common issues" as to the Unreasonable Investigation Class, including that (1) GEICO had records reflecting that the class members did not file claims; (2) GEICO should have, but did not review that information; and (3) GEICO made erroneous reports because of that failure. (See Opp'n at 32).

GEICO baldly asserts that each of these issues "requires analysis of GEICO's records and how it responded to a given dispute." (Reply at 18). The Court agrees with Woodward, however, that "[t]he Amended Complaint does not and need not plead the outer limits of GEICO's imagination." (Opp'n at 33). Woodward is the master of the complaint; as a result, GEICO's attempt to characterize the steps necessary to establish Woodward's claims are unpersuasive. Woodward plausibly asserts common issues of law and fact in the Amended Complaint as to the Unreasonable Investigation Class that predominate over any individualized issues. Thus, while the Court reserves the right to revisit this conclusion

when Woodward moves to certify, the Court will not strike the Rule 23(b)(3) Unreasonable Investigation Class on this basis at the pleading stage.

### d.    Rule 23(b)(2) Objections

Finally, GEICO challenges Woodward's attempt to bring his UPA Class and UPA Damages Sub-Class claims under Federal Rule of Civil Procedure 23(b)(2). Rule 23(b)(2) permits a litigant to seek relief on a class basis where he establishes that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." GEICO asserts that "no class can be certified under Rule 23(b)(2)" because Woodward "lacks standing to seek an injunction under the UPA." (Mot. at 34).

While the Court disagrees that Woodward's failure to plead an entitlement to damages creates a standing issue, see supra Section II.B.1, it nevertheless agrees that Woodward's Rule 23(b)(2) class claims must fail. As set forth supra in Section II.B.3.d, Woodward has failed to adequately plead an entitlement to injunctive relief. In the absence of his own entitlement to injunctive relief, Woodward cannot represent a class seeking such relief. See Dukes, 564 U.S. at 348–49 ("[A] class representative must . . . suffer the same injury as the class members." (emphasis added) (quoting E. Tex. Motor, 431 U.S. at 403)). Accordingly, the Court will strike Woodward's Rule 23(b)(2) claim. But as set forth infra in Section II.B.5, the strike is without prejudice to Woodward's right to move for leave to amend in conjunction with his motion to certify.

5.      **Leave to Amend**

At the end of his Opposition, Woodward requests that "[i]f the Court decides to dismiss any aspect of [his] claims or strike any aspect of the class allegations," the Court instead provide him leave to file an Amended Complaint. (Opp'n at 35). As an initial matter, such an informal request does not comport with the Federal Rules or the Local Rules of this Court. See Fed.R.Civ.P. 7(b); Local Rule 103.6 (D.Md. 2021); Hall v. JPMorgan Chase Bank, N.A., No. JKB-19-2510, 2020 WL 1452132, at *8 (D.Md. Mar. 25, 2020) ("Plaintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief. The Court will deny his request as procedurally improper."). Woodward could have sought consent from Defendants or moved this Court for leave to amend his Complaint to cure the deficiencies identified in GEICO's Motion. See Fed.R.Civ.P. 15(a)(2). The Court will not further delay this litigation by granting Woodward leave to amend a second time at the pleading stage—a move virtually guaranteed to prompt another motion to strike.

Having said that, the Court is mindful that it should favor refining the definition of a class over denying class certification outright. See Messner, 669 F.3d at 825; see also Richards v. NewRez LLC, No. ELH-20-1282, 2021 WL 1060286, at *30 (D.Md. Mar. 18, 2021) ("I shall strike the classes as plaintiffs have defined them. But, I shall grant plaintiffs leave to file an amended complaint."). Accordingly, the Court would ordinarily at this time direct Woodward to submit an appropriate motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) and direct the parties to brief that motion. In the Court's view, however, it is both inefficient and unfair to Woodward to further delay the onset of

discovery so that the parties can continue to argue about the propriety of the class definitions—definitions that will very likely be subject to an additional challenge when Woodward moves to certify. Rather, the more efficient way to proceed is to provide Woodward an opportunity to move for leave to amend the proposed classes in conjunction with his motion to certify, which will allow the parties to brief that issue with the benefit of discovery. See Abdur-Rahman v. Wells Fargo Bank N.A., No. 3:21-CV-00207-RJC, 2022 WL 481788, at *6 (W.D.N.C. Feb. 16, 2022) ("[A]t the certification stage, the Plaintiff or the Court can refine the classes as necessary to bring them within the requirements of Rule 23, if appropriate.").

Accordingly, the Court's decision to strike Woodward's UPA classes is without prejudice to Woodward's ability to amend the Amended Complaint in conjunction with his motion to certify to redefine the classes in a way that satisfies Rule 23. The Court cautions GEICO that for discovery purposes, this ruling means that GEICO should not use the striking of Woodward's UPA class claims as justification to block Woodward's access to discovery relevant to those claims.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in part and deny in part GEICO's Motion to Dismiss Plaintiff's Amended Complaint and Strike Class Allegations (ECF No. 35). A separate Order follows.

Entered this 25th day of July, 2022.

_____
/s/
George L. Russell, III
United States District Judge
